30 C.C.P.A. (Patents)

## In re PETERSON et al.

## Patent Appeal No. 4728.

Court of Customs and Patent Appeals.

June 1, 1943.

Mason & Porter, of Washington, D. C. (Eugene G. Mason and Herbert H. Porter, both of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel) for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

In this appeal we are asked to reverse a decision of the Board of Appeals affirming a decision of the Primary Examiner rejecting claim 20 of appellants' applica-

tion for a patent upon the ground of unpatentability over the cited prior art. Three claims were allowed by the Primary Examiner.

The claim before us reads as follows: "20. A ballcock valve for use in automatically filling a tank, including a valve seat; a discharge chamber for receiving water which passes said valve seat; a valve closure member movable in said chamber for closing or opening the water passage at said seat; a duct for leading the water from said chamber to the tank and including flow-retarding means effective for producing a high back-pressure in said chamber during full flow; float-controlled means responsive to the height of water in the tank for actuating said closure member so that the said closure member is subjected during full flow to the opposing effects of the back-pressure and of the float; and means whereby the effective leverage ratio of effort exerted by the float-controlled means upon the closure member can be adjusted for various supply pressures and being effective to correlate the leverage and the back-pressure effects at the prevailing water supply pressure to produce, during the continuance of the back-pressure effect, a submergence of the float by a distance substantially greater than the float movement required for producing the final shut-off from the point at which the closure member begins essentially to reduce the rate of flow and to cause the closure member, after the initial delay in its movement consequent upon the production of said submergence, to be moved for accomplishing a restricting effect upon the rate of flow past the valve seat and thereby causing reduction in the back-pressure effect and thereby permit raising of the float by its buoyancy, whereby to obtain a quick snap shut-off so that water flow past the seat is quickly terminated and thereby noise and wire-drawing at final closing are eliminated."

The references cited are:

McPartland, 1,839,042, December 29, 1931;
Clemmons, 1,901,633, March 14, 1933;
Peterson, 2,037,737, April 21, 1936.

As indicated by the above quoted claim, the alleged invention relates to a quick closing ballcock valve for a toilet flush tank, having means to adjust the operation of the tank in accord with the inlet pressure which may vary in different localities.

The useful result claimed by appellants is the rapid closing of the valve, reducing the noise ordinarily incident to its closing and also reducing the wire-drawing at and erosion of the seat of the valve during its closing.

After describing the operation of the device, appellants' application states: "It will be noted that the quick or snap shut-off cannot be obtained in a ballcock unless a flow-retarding device, downstreamward of the seat, is incorporated therein. A distinction between the present invention and the prior use of adjustable linkage is the incorporation of a flow retarding device downstreamward of the seat of the ballcock. Where an adjustable linkage is used without the flow retarding device as above mentioned, its sole purpose is to secure sufficient force against the valve closure member to close the same on its seat at various pressures. In such cases, if the leverage is made sufficiently great to effect a satisfactory closure at the higher pressures of water supply, it functions equally well at the lower pressure. This is not the case, however, when a flow retarding device is incorporated in the structure downstreamward of the seat."

It will thus be seen that appellants' claim of invention rests upon the combination of a flow-retarding discharge tube and the employment of adjustable linkage controlling the operation of the valve.

It is conceded by appellants that all of the elements of the claim are broadly shown in the prior art, but it is claimed that their combination into the structure described in the claim involved the exercise of the inventive faculty.

Appellants' Patent 2,037,737 admittedly shows the flow-retarding discharge tube here claimed. Indeed, their instant application specifically states that the discharge tube there referred to is of the character illustrated in said patent. Furthermore, their patent with reference to the discharge tube states: "In practice, it is found that such an apparatus operates both during the full flow of refilling and during the shut-off period with such freedom from noise under the various pressure conditions, that the operation is practically inaudible at a distance of a few feet."

The patent to Clemmons shows a similar discharge tube.

Neither of these patents, however, show any adjustability of the float operated lever mechanism disclosed by appellants. Neither do they describe a function of the flow-retarding discharge tube to secure a quick "or snap shut-off" of the valve.

The patent to McPartland states: "This invention relates to a ball-cock valve and has for an object to provide an improvement over my prior Patent No. 608,897. Another object of the invention is to provide an improved ball-cock valve wherein the parts may be adjusted to produce different fulcrum effects between the ball and the valve to take care of different water pressures. Another object is to provide a ball-cock valve wherein the valve mechanism includes a sleeve slidably mounted on spirally positioned webs whereby an ample space is provided for the flow of the water, and yet the whirling movement given by the webs will prevent appreciable noise."

The Board of Appeals in its decision stated:

"The basic references are the Peterson et al and Clemmons patents. In each one of these patents is a chamber in which the valve operates. The outlet for the chamber is restricted so that during normal flow back pressure will develop in the chamber as in applicants' device. This back pressure is not described in the patents but there is no reason to believe that it is not present. If present, it is clear that when the valve nears the seat the back pressure will disappear and the valve will seat with a snap action.

"Applicants argue that the float in the patents is not submerged to the same extent as in their device and therefore this snap action will not occur. The patents do not describe the extent to which the float is submerged, but it should be comparable to that obtained by applicants, as the back pressure exists in the chamber and will act to submerge the float in the manner described by applicants. Since the constructions shown respond to that set forth by the claim they should function in the equivalent manner.

"The claim includes the feature of adjusting the leverage arm to meet conditions of different water pressures. This is disclosed by McPartland and we fail to find any patentable novelty in this feature. The same feature can be applied to the two basic references if so desired. We have carefully considered applicants' brief, but we are unable to find that it sets forth any real distinction between the art and what is claimed. If any of the specific details

of construction of applicants' device *product* any different action, such details are not recited in the claim.

We are in accord with the views expressed by the board. We are of the opinion that the "snap action" of the valve stressed by appellants is inherent in their prior patent and also in the patent to Clemmons. The patent to McPartland discloses adjustable links for the same purpose as those of appellants, viz., to take care of different water pressures. It seems obvious that it would not require invention to modify the structure shown in either appellants' patent or the patent to Clemmons by providing adjustments of the leverage between the float and the valve as disclosed by McPartland.

Finding no error in the decision appealed from, it is affirmed.

Affirmed.